UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC KEITH RODGERS,

        Plaintiff,                           Case No. 23-cv-13211
                                            Hon. Matthew F. Leitman

v.

REVIERT, *et al.*,

        Defendants

_____/

## ORDER (1) OVERRULING DEFENDANTS' OBJECTIONS (ECF No. 32) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 30), (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 24), AND (3) DISMISSING THE CLAIM FOR FAILURE TO MAINTAIN THE CRIME SCENE

Plaintiff Eric Keith Rodgers is a state inmate in the custody of the Michigan Department of Corrections (the "MDOC"). Rodgers has been diagnosed with gender dysphoria, and he claims that the MDOC has granted him an accommodation requiring that he be housed with a cellmate who had also been diagnosed with gender dysphoria. (*See* Compl. at ¶¶ 10-11, ECF No. 1, PageID.3.) Rodgers alleges that, in violation of both his accommodation and MDOC policy, he was assigned a cellmate who had not been diagnosed with gender dysphoria. (*See id.* at ¶¶ 15-17, PageID.4.) Rodgers claims that that cellmate then sexually assaulted him in their shared cell. (*See id.* at ¶¶ 14, 22, PageID.3, 5.)

1

On December 18, 2023, Rodgers filed this *pro se* civil-rights action under 42 U.S.C. § 1983 against four employees and officials employed by the MDOC. He alleges that three of the Defendants (Adam Douglas, Carolle Walker, and Steven Reviert[1]) failed to protect him from sexual assault and that one of the Defendants (Roland Price) failed to maintain the crime scene by entering his cell following the sexual assault without the presence of law enforcement officers. (*See generally* Compl., ECF No. 1.)

Now before the Court is a motion for summary judgment by Defendants Douglas, Walker, and Price. (*See* Mot., ECF No. 24.) In that motion, Defendants argue that they are entitled to judgment in their favor on the ground that Rodgers failed to exhaust his administrative remedies against them. (*See id.*) The motion was referred to the assigned Magistrate Judge, and he issued a Report and Recommendation recommending that the Court deny the motion (the "R&R"). (*See* R&R, ECF No. 30.) The Magistrate Judge also *sua sponte* recommended that the Court dismiss Rodgers' claim against Price – for failing to maintain the crime scene – for failure to state a claim. (*See id.*, PageID.205-207.)

The Defendants filed objections to the portion of the R&R recommending that the Court deny summary judgment for failure to exhaust. (*See* Obj., ECF No. 32.)

---

[1] In this action, Reviert has also been referred to as "Reivert" and "Rievert." The Court uses the spelling Reviert as that is the spelling used in the Complaint.

Rodgers, who is now represented by counsel, did not object to the Magistrate Judge's recommendation that the Court dismiss his claim against Price for failing to maintain a crime scene.

For the reasons explained below, Defendants' objections (ECF No. 32) are **OVERRULED,** and their motion for summary judgment based upon a failure to exhaust (ECF No. 24) is **DENIED**.  However, because Rodgers did not object to the Magistrate Judge's recommendation to dismiss his claim against Price for failure to maintain a crime scene, the Court will **ADOPT** that recommendation and **DISMISS** that claim.

## I

## A

In October and November of 2022, Rodgers was housed at the Thumb Correctional Facility in Lapeer, Michigan. (*See* Compl. at ¶ 3, PageID.1.)  Douglas was the warden of that facility, and Walker was the deputy warden. (*See id.* at ¶¶ 5-6, PageID.1-2.)  Reviert was a counselor at the facility, and Price was an inspector. (*See id.* at ¶¶ 4, 7.)

Rodgers has been diagnosed with gender dysphoria, and for that reason the MDOC granted him a special accommodation to ensure that he was only placed in a cell with another prisoner diagnosed with gender dysphoria. (*See id.* at ¶¶ 10-11, PageID.3.)

3

On October 28, 2022, Rodgers was assigned a cellmate, Curtis McGoughy, who did not have gender dysphoria. (*See id.* at ¶¶ 14-16, PageID.3-4.)  Shortly thereafter, Rodgers requested a "single person accommodation due to fear of being sexually assaulted." (*Id.* at ¶ 18, PageID.4.)

On November 17, 2022, Rodgers sent a letter to Douglas, Walker, and Reviert "concerning being housed with" McGoughy because McGoughy "had not been designated as a Gender Dysphoria offender in [accordance] with MDOC Policy[.]" (*Id.* at ¶ 19, PageID.4.)  Also in mid-November, Rodgers spoke with Reviert and "made an attempt to explain to . . . Reviert that he feared being in the same cell with McGoughy" because McGoughy was not diagnosed with gender dysphoria. (*Id.* at ¶ 20, PageID.5.)

Douglas, Walker, and Reviert did not take action to remove McGoughy from Rodgers' cell or to move Rodgers to another cell. (*See id.* at ¶¶ 31-33, PageID.7.)

On November 23, 2022, McGoughy sexually assaulted Rodgers.  (*Id.* at ¶ 22, PageID.5.)

## B

At the time of the assault, the MDOC maintained two policies that are relevant to this action.  First, the MDOC maintained a policy for reporting Prisoner/Parolee Grievances, Policy Directive No. 03.02.130 (the "Grievance Policy"). (*See* Grievance Policy, ECF No. 24-2, PageID.143-150.)  The Grievance Policy provides

a three-step reporting process through which prisoners are to report violations of MDOC policy. (*See id.*)  Under the Grievance Policy, prisoners must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue[.] (*Id.* at ¶ Q, PageID.146.)  If the issue is not resolved with the staff member, the prisoner may then file a "Step I grievance" using a "Prisoner/Parolee Grievance" form. (*Id.* at ¶¶ Q, S.)  If the prisoner is "dissatisfied with the response received at Step I," he may file a "Step II grievance." (*Id.*  at ¶ DD, PageID.148.)  And if the prisoner is "dissatisfied with the Step II response," he may file a "Step III grievance." (*Id.* at ¶ HH, PageID.149.)  "The Step III response is final." (*Id.* at ¶ II.)  A prisoner exhausts his administrative remedies as to a particular claim "only when [the claim is] filed as a grievance through all three steps of the grievance process." (*Id.* at ¶ C, PageID.143.)

The Grievance Policy provides that it does not apply to grievances "regarding sexual abuse" and that such grievances shall be reported under the policy covering "Sexual Abuse and Sexual Harassment of Prisoners – Prison Rape Elimination Act (PREA)," Policy Directive No. 03.03.140 (the "PREA Policy"):

> Grievances filed *regarding sexual abuse*, including those filed by a third party, *shall not be processed as grievances under this policy* but shall be reported in accordance with PD 03.03.140 "Prison Rape Elimination Act (PREA) and Prohibited Sexual Conduct Involving Prisoners." Any grievance submitted under this policy that contains an allegation of sexual abuse shall be copied by the Grievance

Coordinator and forwarded to the PREA Coordinator. The original grievance shall be returned to the prisoner.

(Grievance Policy at ¶ D, ECF No. 24-2. PageID.143; emphasis added.)

The PREA Policy "details the [MDOC's] zero-tolerance standard toward all forms of sexual abuse and sexual harassment involving prisoners and outlines the [MDOC's] approach to preventing, detecting, and responding to such conduct." (PREA Policy, ECF No. 32-3, PageID.242.)  Under the PREA Policy, sexual abuse "includes": (1) "[s]exual abuse of a prisoner by another prisoner" and (2) "[s]exual abuse of a prisoner by an employee." (*Id.* at ¶ Q, PageID.243.)  The PREA Policy also states that "PREA addresses prisoner-on-prisoner sexual abuse and sexual harassment[.]" (*Id.* at ¶ U, PageID.244.)

The PREA Policy's reporting procedure is different from the reporting requirements under the Grievance Policy.  Under the PREA Policy, prisoners can make oral or written reports, "in any manner" (*id.* at ¶ UU, PageID.248) and their allegations will be investigated. (*Id.* at ¶¶ XX, PageID.248-249.)  Like the Grievance Policy, the PREA Policy clarifies that the Grievance Policy does not apply to allegations "regarding sexual abuse":

> The MDOC has eliminated the administrative grievance procedure for addressing prisoner grievances *regarding sexual abuse*. If prisoners utilize the prisoner grievance system to report an allegation of sexual abuse, the Grievance Coordinator shall forward the sexual abuse allegation to the facility PREA Coordinator for further handling in accordance with this policy, and the sexual

6

> abuse grievance shall be removed from the grievance process. The prisoner shall be notified in writing that this has occurred.

(*Id.* at ¶ VV, PageID.248; emphasis added.) The PREA Policy still permits, but does not require, prisoners to use the Grievance Policy to report sexual harassment or retaliation. (*See id.* at ¶ WW.) The PREA Policy does not contain any provisions concerning the exhaustion of remedies.

## C

On November 23, 2022, the day Rodgers was assaulted, he "attempted to obtain a PREA Grievance [form] but none was available." (Compl. at ¶ 25, ECF No. 1, PageID.6.) Because no PREA forms were available, on November 23, 2022, Rodgers filed a Step I grievance, identified as Grievance SRF-1056. (*See id.*; *see also* Grievance SRF-1056, ECF No. 24-3, PageID.162.) On November 26, 2022, Rodgers filed a second Step I grievance, identified as Grievance SRF-1055. (*See id.* at ¶ 35, PageID.7; *see also* Grievance SRF-1055, ECF No. 24-3, PageID.167.)

In Rodgers' first Step I grievance, he named only Reviert as the subject of the grievance. (*See* Grievance SRF-1056, ECF No. 24-3, PageID.162.) In that grievance, he complained that he had been diagnosed with gender dysphoria and had a "[m]edical [s]pecial [a]ccommodation" to "only be housed with another" gender dysphoric prisoner. (*Id.*) He claimed that Reviert "refused to [i]nvestigate and [c]heck to see if" McGoughy had also been diagnosed with gender dysphoria before

7

"placing him in the room with" Rodgers. (*Id.*)  That grievance was denied on the grounds that (1) Reviert denied speaking to Rodgers "concerning this issue," and (2) there was "no evidence that prisoner Rodgers was housed incorrectly" so "[n]o violation of policy was found." (*Id.*, PageID.163.)  Rodgers appealed the decision to Step II. (*See id.*, PageID.159.)  In his Step II appeal, Rodgers complained that Reviert "never did any kind of investigation" when placing McGoughy in a cell with him (Rodgers). (*Id.*)  Rodgers' Step II appeal was denied because "[t]he Step II grievance issue of prisoner Rodgers being housed with a prisoner McGoughy . . . erroneously was investigated and found to be incorrect." (*Id.*, PageID.160.)  Finally, Rodgers appealed that decision to Step III. (*See id.*, PageID.159.)  In his Step III appeal, Rodgers identified Walker, Douglas, and Reviert by name and alleged they were "in violation of policy" when they "[p]laced [McGoughy] in the [c]ell with" Rodgers before the "RAPE OCCUR[RED]." (*Id.*)  The Step III appeal was denied. (*Id.*, PageID.158.)

In the second Step I grievance, Rodgers identified Price and wrote: "I was Sexual[ly] Assaulted, on 11/23/2022." (Grievance SRF-1055, ECF No. 24-3, PageID.167.)  That grievance was rejected on the basis that Rodgers had failed to attempt to address the issue with Price before he filed the grievance. (*See id.*)  Rodgers appealed the rejection to Step II, and he complained in his Step II appeal that his sexual assault had not been investigated. (*See id.*, PageID.165.)  Douglas

reviewed the Step II appeal and denied it on the basis that Rodgers' "allegations of sexual abuse are currently being investigated by the Department." (*Id.*, PageID.166.) Rodgers appealed that grievance to Step III, and wrote in his Step III appeal that "[t]here never would [have] been a sexual abuse, if the staff would [have] acted and followed [their] own policy when placing another inmate in my cell." (*Id.*, PageID.165.)  His Step III appeal was denied. (*See id.*, PageID.164.)

## D

On December 18, 2023, Rodgers filed this action against Reviert, Walker, Douglas, and Price. (*See* Compl. at ¶¶ 4-7, ECF No. 1, PageID.1-2.)  Rodgers claims that Reviert, Walker, and Douglas were deliberately indifferent to a known risk of sexual assault in violation of the Eighth Amendment. (*See* Compl. at ¶¶ 31-33, ECF No. 1, PageID.7.)  He claims that Price failed to secure the crime scene of the assault. (*See id.* at ¶ 34.)

On August 1, 2024, Walker, Douglas, and Price filed a motion for summary judgment on the basis that Rodgers failed to exhaust administrative remedies against them. (*See* Mot., ECF No. 24, PageID.129-130.)  The Defendants' motion proceeds from the premise that the Grievance Policy applies to Rodgers' claims. (*See id.*, PageID.132.)  Defendants say that Rodgers failed to exhaust his claims against Walker and Douglas under the Grievance Policy because Rodgers did not name them at Step I of either grievance related to this action. (*See id.*, PageID.136-137.)  And

Defendants argue that Rodgers did not exhaust his claims against Price under the Grievance Policy because his grievance against Price (Grievance SRF-1055) was rejected at Step I on the ground that he (Rodgers) failed to attempt to resolve the issue with Price before filing that grievance. (*See id.*, PageID.137-138.)

In the R&R, the Magistrate Judge recommended that the Court deny the Defendants' motion. (*See* R&R, ECF No. 30.)  The Magistrate Judge concluded that "reasonable minds could disagree on which policy [*i.e.*, the Grievance Policy or the PREA Policy] applied to [Rodgers'] claim." (*Id.*, PageID.204.)  More specifically, he concluded that the term "regarding sexual abuse" in the Grievance Policy is ambiguous and could reasonably be read to include a grievance alleging a failure to protect a prisoner from sexual abuse. (*Id.*, PageID.203.) The Magistrate Judge concluded that in light of that ambiguity, Rodgers did not "need" to "exhaust the claim through" the Grievance Policy. (*Id.*)

The Magistrate Judge did, however, recommend that the Court dismiss Rodgers' claim against Price for failing to secure the crime scene. (*See id.*, PageID.206-207.)  The Magistrate Judge recommended that the Court dismiss that claim because the "[f]ailure to maintain a crime scene by entering it without police officer presence, without more, violates no federal or constitutional law, and the [Magistrate Judge was] unaware of any such violation of Michigan law." (*Id.*,

10

PageID.207.) Thus, "[b]ecause there [was] no apparent violation of law, the [Magistrate Judge] suggest[ed] that the claim be dismissed." (*Id.*)

The Defendants have now filed objections to the R&R.[2] (*See* Obj., ECF No. 32.) They argue that Rodgers was required to exhaust his claims under the Grievance Policy because his claim was not a claim "regarding sexual abuse" to which the PREA Policy applies. (*See id.*, PageID.218-227.) According to Defendants, an inmate's grievance against an MDOC employee is "regarding sexual abuse" only when the inmate alleges that the employee, himself, sexually abused the inmate. (*See id.*, PageID.218.) In a related vein, Defendants say that an inmate's grievance that an MDOC employee *failed to protect* the inmate from sexual abuse by another prisoner is not a claim "regarding sexual abuse." (*See id.*) Defendants conclude that since Rodgers alleges that they failed to protect him from sexual abuse, he was required to exhaust his claim through the Grievance Policy.

For the reasons explained below, Defendants' objections are **OVERRULED**.

## II

### A

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed. R. Civ. P.

---

[2] Rodgers has not filed any objection to the Magistrate Judge's recommendation that the Court dismiss his claim against Price.

72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

## B

Under the Prison Litigation Reform Act (the "PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires exhaustion in order to "allow[] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court . . . and to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, 549 U.S. 199, 204 (2007). "Failure to exhaust [under the PLRA] is an affirmative defense." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019). Thus, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, "defendants [bear] the burden of proof on exhaustion." *Sules v. Anderson*, 678 F.3d 452, 455 (6th Cir. 2012); *see also id.* at 456 ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies").

In order for a prisoner to exhaust his administrative remedies, he must "us[e] all steps that the [prison] holds out" in its internal grievance procedure "and do[] so properly (so that the [prison] addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006) (quotations omitted). Thus, a prison's requirements, not the PLRA, "define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218. Finally, prisoners need only "exhaust available remedies," and they need "not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016).

### III

### A

The dispositive question with respect to Defendants' objection is: Is the term "regarding sexual abuse" – as used in the Grievance Policy – limited to allegations that an MDOC staff member personally committed sexual abuse against an inmate? Stated another way, is the term "regarding sexual abuse" as used in the Grievance Policy broad enough to encompass a grievance that an MDOC staff member failed to protect an inmate from sexual abuse by another inmate?  The Court concludes that that term in the Grievance Policy is not limited to direct sexual abuse by MDOC staff and that it includes grievances that an MDOC staff member failed to protect an inmate from sexual abuse at the hands of another inmate.  Thus, Rodgers was not required to exhaust his claim under the Grievance Policy.

13

The Court's conclusion is compelled by the plain meaning of the word "regarding." That word means "in reference or relation to; about, concerning." *Regarding*, *Oxford English Dictionary* (3d ed. 2007). It has an "extremely broad" reach. *Davis v. Fenton*, 26 F.Supp.3d 727, 740 (N.D. Ill. 2014) (noting that term "arising out of" and "relating to" have an "extremely broad" reach and that the term "regarding" is "just as broad" as those terms). Indeed, the "use of 'regarding' 'in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject.'" *Patel v. Garland*, 596 U.S. 328, 339 (2022) (quoting *Lamar, Archer & Coffin, LLP v. Appling*, 584 U.S. 709, 717 (2018)). Strictly limiting the term "regarding sexual abuse" to grievances alleging direct sexual abuse by an MDOC employee would be inconsistent with the broad sweep of the word "regarding" as that term is used in the phrase "regarding sexual abuse."

Given the breath of the term "regarding," a grievance alleging that an MDOC employee failed to protect an inmate from sexual abuse is a grievance "regarding sexual abuse" for purposes of the Grievance Policy. That must be the case because such a grievance plainly "relat[es] to" – indeed, arises directly out of – the "subject" of sexual abuse. *Id.*

The terms of the PREA Policy confirm, as the Court has concluded, that the Grievance Policy excludes grievances complaining that an MDOC staff member

14

failed to protect an inmate from sexual abuse.  As quoted above, the PREA Policy explains that "[t]he MDOC has eliminated the administrative grievance procedure for addressing prisoner grievances regarding sexual abuse." (PREA Policy at ¶ VV, ECF No. 32-3, PageID.248.)   And the PREA Policy defines "sexual abuse" to include "[s]exual abuse of a prisoner by another prisoner." (*Id.* at ¶ Q, PageID.243.) Thus, the PREA Policy declares that the Grievance Policy does not apply to grievances "regarding" prisoner-on-prisoner sexual abuse.  As explained above, a grievance complaining that a staff member failed to protect a prisoner from such abuse is plainly such a grievance.

Turning to this case, Rodgers' grievance complaining that Walker and Douglas failed to protect him from sexual abuse (Grievance SRF-1056) was a grievance "regarding sexual abuse."  Rodgers was therefore not required to exhaust that grievance through the Grievance Policy.  Douglas and Walker are therefore not entitled to summary judgment on the ground that Rodgers failed to exhaust his administrative remedies under the Grievance Policy.

## B

Defendants counter that the Court should adopt the analysis in two Reports and Recommendations in which Magistrate Judges have concluded that a grievance alleging that an MDOC employee failed to protect an inmate from a sexual abuse

had to be exhausted through the Grievance Policy. Neither Report and Recommendation persuades the Court to reach that conclusion.

Defendants first direct the Court to a Report and Recommendation in *Grover v. Lange*, No. 21-cv-252, 2022 WL 485028 (W.D. Mich. Jan. 14, 2022). In *Grover*, a Magistrate Judge concluded that an inmate was required to exhaust through the Grievance Policy his claim that an MDOC staff member failed to protect him from a sexual assault by another inmate. *See id.* at *5. But the plaintiff in *Grover* did not present any arguments concerning, and the Magistrate Judge did not address, the significance of the term "regarding sexual abuse" as used in the Grievance Policy. Instead, the Magistrate Judge treated the Grievance Policy as if it excluded from its reach only "allegations *of* sexual abuse," *id.* at *4 (emphasis added) – a universe of allegations that is narrower than allegations "regarding sexual abuse." Because the Magistrate Judge was not asked to consider, and therefore did not analyze, the importance of the term "regarding sexual abuse" as used in the Grievance Policy, the Court concludes that the Report and Recommendation in *Grover* does not shed substantial light on the dispositive question before the Court.[3]

---

[3] The District Judge in *Grover* adopted the Report and Recommendation, but he noted that the plaintiff's objections did "not address the Report and Recommendation in a persuasive way." *Grover v. Lange*, No. 21-252, 2022 WL 475609, at *1 (W.D. Mich. Feb. 16, 2022). Moreover, the plaintiff conceded in his objections that the Magistrate Judge correctly determined that he (the plaintiff) had failed to exhaust his claims against several of the defendants. *See id.* And, as noted above, the plaintiff did not present any arguments to the Magistrate Judge

Defendants also point the Court to a Report and Recommendation in *Perkins v. Johnson*, No. 23-11530, 2024 WL 4481462 (E.D. Mich. Aug. 13, 2024). In that Report and Recommendation, the Magistrate Judge concluded that an inmate had to exhaust through the Grievance Policy his claim that an MDOC staff member failed to protect him from sexual abuse by another inmate. *See id.* at *5. As in *Grover*, however, the Magistrate Judge reached that conclusion without the benefit of any argument by plaintiff concerning the significance of the term "regarding sexual abuse." *See id.* The Magistrate Judge stressed that the plaintiff did "not meaningfully dispute" that "an Eighth Amendment failure-to-protect claim is only properly exhausted through [the Grievance Policy]." *Id.* In fact, the plaintiff's supplemental briefing "fail[ed] to address" that point even though the Magistrate Judge had directed the plaintiff to do so in that briefing. *Id.* Because the Magistrate Judge issued the Report and Recommendation without meaningful advocacy on the key issue in dispute, the Report and Recommendation does not guide the way here.[4]

---

concerning the term "regarding sexual abuse." The Court has no reason to believe the District Judge in *Grover* considered the importance of that term.

[4] The District Judge in *Perkins* adopted the Report and Recommendation, but, neither party had "filed timely objections." *Perkins v. Johnson*, No. 23-cv-11530, 2024 WL 4039736 (E.D. Mich. Sept. 4, 2024).

**C**

For all of these reasons, the Court **OVERRULES** Defendants' objections and **ADOPTS** the recommendation in the R&R to deny Defendants' summary judgment motion.

**IV**

Finally, the Court turns to the Magistrate Judge's recommendation that the Court *sua sponte* dismiss Rodgers' claim against Price for failing to state a claim. As noted above, Rodgers has not filed any objections to that recommendation. The failure to object to an R&R releases the Court from its duty to independently review the matter. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985). *See also Ivey v. Wilson*, 832 F.2d 950, 957 (6th Cir. 1987) (explaining that where party fails to file "timely objections" to Report and Recommendation, court may accept that recommendation "[w]ithout expressing any view on the merits of the magistrate's conclusions"). Because Rodgers has not filed any objections to the recommendation in the R&R that the Court dismiss the claim against Price for failure to maintain a crime scene, the Court **ADOPTS** that recommendation. That claim is **DISMISSED**.

**V**

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

1. Defendants Walker's, Douglas', and Price's objections (ECF No. 32) to the Magistrate Judge's Report and Recommendation (ECF No. 30) are **OVERRULED**.

2. Defendants Walker's, Douglas', and Price's motion for summary judgment (ECF No. 24) is **DENIED**.

3. Rodgers' claim against Price for failure to maintain a crime scene is **DISMISSED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 18, 2025


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 18, 2025, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126